CITY OF BOYNE CITY v CRAIN

Docket No. 108858. Submitted June 14, 1989, at Grand Rapids. Decided August 22, 1989.

Plaintiff, the City of Boyne City, brought an action in the Charlevoix Circuit Court against defendants, Elmer F. and Clara M. Crain, seeking a determination regarding property rights to two parcels of land owned by the city over which defendants claimed title by virtue of a railroad right of way. Prior to trial, the trial court, Richard M. Pajtas, J., granted partial summary disposition in favor of plaintiff, concluding that the deed granting the right of way to the railroad with respect to parcel no. 2 created a mere easement rather than a grant of fee title. Thereafter, the court concluded that the right of way had been abandoned and the easement had been extinguished. Following a trial, the court entered a judgment vesting fee title in both pieces of property to the plaintiff, adjudicating the property free of any easement for a railroad right of way and permanently enjoining defendants from trespassing on the property. Defendants appealed.

The Court of Appeals *held:*

1. The trial court did not err in determining that the deed granting the right of way over parcel no. 2 conveyed only an easement rather than fee title.

2. MCL 211.67b; MSA 7.112(2) is to be given prospective effect only and, therefore, does not operate to preserve the right of way easement across parcel no. 1. The trial court properly determined that the deed granting the right of way across parcel no. 1 conveyed only an easement and that the easement was extinguished when the property reverted to the state due to delinquent taxes.

3. The trial court properly determined that defendants had no means of access to the right of way on parcel no. 2 and, therefore, that right of way was extinguished because it was impossible to use the right of way.

Affirmed.

REFERENCES

Am Jur 2d, Easements and Licenses §§ 77-80; 101 *et seq.*

Conveyance of "right of way," in connection with conveyance of another tract, as passing fee or easement. 89 ALR3d 767.

1. PROPERTY — EASEMENTS.

    Where the land itself is conveyed, although for railroad purposes only, without specific designation of a right of way, the conveyance is in fee and not of an easement; where the grant is not of the land but is merely of the use or of the right of way, or, in some cases, of the land specifically for a right of way, it is held to convey an easement only.

2. PROPERTY — EASEMENTS — TAX SALES — STATUTES.

    Prior to the enactment in 1964 of the statute providing that any land sold for taxes shall remain subject to any visible or recorded easement, right of way or permit in favor of the United States, the state or any political subdivision or agency, any public authority, drainage district, or granted or dedicated for public use or for the use by a public utility, the rule was that, for any land taken by the state because of the nonpayment of taxes, any subsequent conveyance of title in fee to that land by the state was free of any encumbrances, thus extinguishing any easements which existed at the time the state took title to the property; the statute is not to be given retroactive effect (MCL 211.67b; MSA 7.112[2]).

3. PROPERTY — EASEMENTS — ACCESS TO EASEMENTS.

    A right of way over a parcel of land may be determined to be extinguished where the party claiming the right of way has no means of access to the right of way and it is, therefore, impossible to use it.

*McTaggart & Arner* (by *William R. McTaggart*), for plaintiff.

*Mark M. Muniak,* for defendants.

Before: HOLBROOK, JR., P.J., and SAWYER and GRIFFIN, JJ.

PER CURIAM. Defendants appeal from a judgment of the circuit court vesting fee title in property to the City of Boyne City, adjudicating the property free of any easement for a railroad right of way and permanently enjoining defendants from trespassing on the property. We affirm.

The trial court succinctly set forth the facts of

this case in its opinion and we adopt that statement as our own for purposes of this appeal. The trial court stated the facts as follows:

> There are two parcels of land owned by the City involving the issue of the defendants [sic] interest in the railroad property. These two parcels are depicted on plaintiff's Exhibit No. 1. The plaintiff's title to Parcel No. 1 begins with a 1941 deed to the City of Boyne City from the State of Michigan of tax reverted lands.
>
> The City's title to Parcel No. 2 as depicted on plaintiff's Exhibit No. 1 commences with deeds from Vera Posch, dated 1959 and 1973.
>
> The defendants claim title to the railroad right of way across Parcel No. 1 through a deed from William H. White as reflected in the chain of title. The defendants claim interest in the railroad right of way over Parcel No. 2 from a 1984 [sic—1894?] deed from Ernest Bachman as reflected in the chain of title. The defendants acquired their interest in both Parcels No. 1 and No. 2 by virtue of a 1985 deed from the estate of Dennis Caughey. The defendants also received other interest in railroad property from the Caughey estate.
>
> The railroad in question goes back to the lumbering era at the turn of the century. It basically ran from the City of Boyne City to Boyne Falls, where it connected with an interstate railroad. That interstate railroad has been completely abandoned. The railroad operating out of Boyne City was formerly a freight railroad and operated successfully until approximately the closing of the tannery operation in Boyne City. In 1976, a group was formed and an attempt was made to save the railroad as a tourist attraction. That effort lasted until approximately 1979 or 1980 when it was disbanded for economic reasons. The group that operated the railroad as a tourist attraction sold the assets and dissolved the corporation. All of its rolling stock was sold. The tracks and the ties were liquidated for scrap and the revenue thus

generated was used to pay creditors. The share-
holders received about one-half of their invest-
ment. The largest shareholder was Dennis Cau-
ghey, now deceased, who received the right of way
in lieu of payment for his shares in the defunct
corporation.

It is undisputed that Mr. Caughey conveyed the
easterly end of the right of way from Dam Road to
Boyne Falls to the Boyne Mountain Resort, an
abutting landowner. This portion constituted ap-
proximately one-half of the six miles of roadbed
between Boyne City and Boyne Falls. So far as this
portion of the railroad is concerned, it is also
undisputed that the conveyance severed the only
continuity of the right of way between Boyne City
and Boyne Falls. This renders it impossible to
reestablish the former railroad. Following Mr.
Caughey's death, his estate, by his personal repre-
sentative, Arthur Rouse, quit claimed the remain-
ing westerly portion of the railroad to the defen-
dants in 1985. It is a portion of this remaining
westerly portion that runs through Parcels No. 1
and No. 2, as depicted on plaintiff's Exhibit No. 1.

In 1985, the City purchased any interest that
the defendant [sic] had in the railroad right of way
by quit claim deed regarding property owned by
the City and proposed for the development of an
industrial park. It was necessary for the City to
immediately acquire clear title so as to not lose a
corporate prospect that contemplated the construc-
tion of a factory in the industrial park. This
conveyance effectively cut off any access to the
disputed right of way by the defendant [sic] from
the southeast. The defendant [sic] placed several
cedar posts at the end of the disputed right of way,
adjacent to the City's airport runway. Those cedar
posts triggered this litigation as it was claimed
that they created a hazard to airport traffic. The
posts were removed by the City and the defen-
dants agreed not to reinstall the posts pending the
outcome of this litigation.

The defendant, Elmer F. Crain, testified that he
planned to start a miniature railroad on the por-

tion of the right of way remaining that has not been sold to others. While it is not clear just how much right of way the defendants acquired, the testimony does establish that they paid Twelve Thousand Dollars ($12,000) for it. The defendants have sold off portions of the property, including the sale of the above mentioned portion to the City for a consideration of Ten Thousand Dollars ($10,000). The defendant testified that it was his intention to create a miniature railroad that would cater to tourists.

Some of the right of way property conveyed to the defendants by the Caughey estate conveyed fee title as a result of the original source of title. Other portions of the conveyance conveyed a mere easement as previously determined by this Court on a motion for partial summary disposition regarding Parcels No. 1 and No. 2.

Defendants first argue that the trial court erred in determining that the deed which granted the railroad right of way located on Parcel No. 2 conveyed only an easement for use of the right of way to operate a railroad rather than fee title to the right of way. We note that, prior to trial, the trial court granted partial summary disposition in favor of plaintiff, concluding that the deed granting the right of way to the railroad with respect to Parcel No. 2 created a mere easement rather than a grant of fee title. Thereafter, the court concluded that the right of way had been abandoned and, therefore, the easement had been extinguished.

The question whether a deed for a railroad right of way conveys a fee interest or merely an easement was discussed by the Supreme Court in *Quinn v Pere Marquette R Co,* 256 Mich 143, 150-151; 239 NW 376 (1931):

"Right of way" has two meanings in railroad parlance: the strip of land upon which the track is

laid, and the legal right to use such strip. In the latter sense it may mean an easement. But in this State and others the character of the title taken to the strip depends upon the language of the conveyance.

Where the grant is not of the land but is merely of the use or of the right of way, or, in some cases, of the land specifically for a right of way, it is held to convey an easement only. *Hickox v Railway Co,* 78 Mich 615 [44 NW 143 (1889)]; *Mahar v Railway Co,* 174 Mich 138 [140 NW 535 (1913)]; *Putnam v Railway Co,* 174 Mich 246 [140 NW 554 (1913)]; *Matthews v Railway Co,* 110 Mich 170 (64 Am St Rep 336) [67 NW 1111 (1896)]; *Jones v Van Bochove,* 103 Mich 98 [61 NW 342 (1894)]; *Blakely v Railway Co,* 46 Neb 272 (64 NW 972) [1895]; *Louisville & Nashville R Co v Covington,* 65 Ky 526 [1866]; *East Alabama R Co v Doe,* 114 US 340 (5 Sup Ct 869) [29 L Ed 136 (1885)]; *Lockwood v Railroad Co,* 43 CCA 202 (103 Fed 243) [CA 4, 1900].

Where the land itself is conveyed, although for railroad purposes only, without specific designation of a right of way, the conveyance is in fee and not of an easement. The distinction was pointed out by Mr. Justice Sharpe in *Epworth Assembly v Railway,* 236 Mich 565, 573 [211 NW 99 (1926)]:

"On the face of these deeds it would appear that a determinable fee had been created. In neither deed is the land conveyed for a right of way, although an inference would doubtless be drawn that it was, from the description used. The first deed provides that the land shall 'be used for railroad purposes only,' and the second that if the land shall 'cease to be used for railroad purposes' for 'one year or longer' it shall revert to the grantor. Had not these provisions been inserted, it seems clear that an unqualified title in fee would have passed to the grantees."

Thus, we must look to the 1894 deed which conveyed the right of way over Parcel No. 2. That document was entitled "Deed of Right of Way"

and granted "a strip of land for a RIGHT OF WAY" and provided in pertinent part as follows:

> Said strip to include all land within lines drawn twenty-five feet from, on either side of, and parallel to the center line of said railroad, as now or hereafter to be located and constructed, on and across said above described premises, said center line being located and shown on map and survey thereof filed in the office of the Register of Deeds of said County.
>
> For the said party of the second part and its successors, lessees and assigns, and their servants and agents to build, construct and maintain a Railroad in and over said strip of land, and at all times to pass and repass by themselves, their servants, agents, and employees, with their engines, cars, horses, cattle, carts, wagons and other vehicles, and transport freight and passengers, and do all other things properly connected with or incident to the location, building, maintaining and running the said road, and to use the earth and other materials within said strip of land for that purpose; *To Have and to Hold* the *said easements and privileges* to the said party of the second part and its successors, lessees and assigns, FOREVER. [Emphasis added.]

Inasmuch as the 1894 deed granted a right of way and specifically made reference to the "said easements" we conclude that the grant was one of an easement rather than title in fee. Accordingly, we conclude that the trial court did not err in determining that the deed conveyed only an easement rather than fee title.

Defendants next argue that MCL 211.67b; MSA 7.112(2) should be given retroactive effect, thus preserving the right of way easement across Parcel No. 1. We disagree.

The trial court determined that the 1905 deed granting the right of way across Parcel No. 1

conveyed only an easement and that that easement was extinguished when the property reverted to the State of Michigan due to delinquent taxes. MCL 211.67b; MSA 7.112(2), added by 1964 PA 86, provides that any land sold for taxes shall remain subject to any visible or recorded easement, right of way or permit in favor of the United States, the state or any political subdivision or agency, any public authority, drainage district, or granted or dedicated for public use or for the use by a public utility. Prior to the enactment of that statute in 1964, the rule was that, for any land taken by the state because of the nonpayment of taxes, any subsequent conveyance of title in fee to that land by the state was free of any encumbrances, thus extinguishing any easements which existed at the time the state took title to the property. *Moceri v St Clair Shores,* 366 Mich 380, 384-385; 115 NW2d 103 (1962).

MCL 211.67b; MSA 7.112(2) was apparently passed shortly after the *Moceri* decision as a remedial measure to preserve the existing easements in favor of the government or public utilities which existed when the land was sold for taxes. Plaintiff urges that we give that section retroactive effect since it was remedial in nature.

Generally, statutes are applied prospectively unless the Legislature has expressly or impliedly indicated its intent to give retroactive effect or unless the statutes are remedial or procedural in nature. *Spencer v Clark Twp,* 142 Mich App 63, 67; 368 NW2d 897 (1985). That is, statutes which operate in furtherance of an already existing remedy and which neither create new rights nor destroy existing rights are applied retrospectively unless a contrary legislative intent is manifested. *Id.;* see also *Gormley v General Motors Corp,* 125 Mich App 781, 789; 336 NW2d 873 (1983). Further-

more, statutes affecting property rights are presumed not to operate retrospectively. *Mary v Lewis,* 399 Mich 401, 414; 249 NW2d 102 (1976).

Although it would appear that the Legislature enacted MCL 211.67b; MSA 7.112(2) for the purpose of changing the rule of law to ensure that certain easements remained valid even after a tax sale, we do not believe that the statute should be given retroactive effect. To apply the statute retroactively would create or take away vested rights, and it certainly involves property interests. Indeed, were we to apply the statute retroactively, a great many property interests in this state would be disturbed as people who took title following tax sales did so believing that prior easements had been extinguished and would now have those easements resurrected. Accordingly, we believe it appropriate to apply the rule in *Mary, supra,* and presume that the Legislature intended this statute to have prospective effect only.

Finally, defendants argue that the trial court erred in finding that the sale of the railroad trackage indicated an intent to abandon the right of way located on Parcel No. 2. We disagree. The conclusion of abandonment was based upon more than the mere removal of trackage from the railroad right of way and included the fact that the right of way on Parcel No. 1 had been extinguished by the tax deed and that the right of way to the southeast of Parcel No. 2 had been sold. Thus, the trial court found that defendants had no means of access to the right of way on Parcel No. 2 and, therefore, the right of way on Parcel No. 2 was extinguished by reason that it was impossible to use the right of way. See *Andersen v Schmidt,* 16 Mich App 633, 635; 168 NW2d 437 (1969). Given that we have affirmed the trial court's

conclusion that the right of way over Parcel No. 1 was extinguished by the tax deed, we cannot conclude that the trial court erred in finding that the easement was extinguished by impossibility of use since defendants have no access to the right of way on Parcel No. 2.

For the reasons stated above, we believe that the trial court correctly ruled in favor of plaintiff.

Affirmed. Plaintiff may tax costs.